```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-7-11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
AT&T MOBILITY LLC,

                      Plaintiff,

      -against-

RICHARD GONNELLO, JUAN
MONTEVERDE, LEAF O'NEAL, JARED
POPE and BRYAN RODRIQUEZ,

                      Defendants.
-----------------------------------------------------------x

11 Civ. 5636 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

        Defendants are five customers of AT&T Mobility LLC ("ATTM") who have demanded arbitration with ATTM from the American Arbitration Association ("AAA") pursuant to their customer agreements. The sole relief sought in the 227-page demand is injunctive relief pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26. Specifically, defendants seek an injunction against the announced merger between ATTM and T-Mobile USA, Inc. ("T-Mobile") or, in the alternative, the imposition of certain business divestitures and other conditions on the closing of the merger. Nine hundred and seventy-two other customers of ATTM, also represented jointly by the law firms of Bursor & Fisher, P.A., Faruqi & Faruqi LLP, and Thornton, Davis & Fein, P.A., have filed similar demands with the AAA. Twenty-four of the 977 arbitrations, including the five filed by the defendants, are currently being administered by the AAA.

        ATTM has filed suit in this district and in seven other districts seeking to enjoin the twenty-four arbitrations. Now before this Court are two motions. Defendants move to compel the arbitrations as to the five defendants and dismiss ATTM's complaint. Plaintiff

moves for a preliminary injunction to enjoin the five arbitrations.  For the reasons set forth below, defendants' motion to compel arbitration is denied.  The Court need not reach plaintiff's motion for a preliminary injunction at this juncture.  The Court will retain jurisdiction in the event there are further applications pending the closing or abandonment of the merger.

BACKGROUND

On March 21, 2011, AT&T Inc., ATTM's parent company, and Deutsche Telekom AG announced an agreement pursuant to which AT&T Inc. will acquire Deutsche Telekom's subsidiary T-Mobile USA and merge it with ATTM.  (Decl. of Joseph Baker ("Baker Decl.") ¶¶ 3-4 & Exs. 1-2.)  The transaction is valued at approximately $39 billion.  (Id.)

There are several regulatory and judicial proceedings relating to the announced merger.  On August 31, 2011, the Department of Justice ("DOJ") commenced an action in the United States District Court for the District of Columbia seeking a permanent injunction barring completion of the announced merger, alleging that it violates section 7 of the Clayton Act, 15 U.S.C. § 18.  United States v. AT&T Inc., No. 1:11-cv-01560 (D.D.C. Aug. 31, 2011), 2011 WL 3823252.  The Federal Communications Commission ("FCC") is also reviewing the merger.  In connection with the FCC's review, the merging entities have submitted hundreds of pages of briefs and the affidavits of nineteen witnesses.  (Baker Decl. ¶ 8 & Ex. 6.)  At the request of the FCC, the merging entities have also submitted approximately 1.4 million pages related to wireless telephone service across the country for the last three years.  (Decl. of Michael Van Ardsall ¶ 4.)  More than 400 organizations have filed papers with the FCC in support of the announced merger, while more than 130 organizations have filed papers in opposition.  (Baker Decl. ¶ 8 & Ex. 6.)  Finally, the merger is being reviewed by a number of State Attorneys General and State Public Utilities Commissions, including the public utility commissions of

Arizona, California, Hawaii, Louisiana, and West Virginia. (Id. ¶¶ 17-22 & Exs. 15-20.) The commissions of Arizona, Louisiana, and West Virginia have already approved the merger. (Id. ¶¶ 17, 21, 22 & Exs. 15, 19, 20.)

As noted, defendants are five ATTM customers who have commenced arbitration proceedings pursuant to Section 2.2 of their Wireless Customer Agreement with ATTM. The demand for arbitration is 388 paragraphs in length and contains 641 footnotes. Little or nothing is said about the customer demanding arbitration beyond the allegation that he or she is a purchaser of goods and services from ATTM. (Decl. of Scott A. Bursor Ex. 2 ("Demand"), ¶ 5.) The demand asserts that the "proposed horizontal merger would greatly increase concentration in the wireless industry and harm competition in national and local markets." (Id. at 18.) It asserts that the merger would violate section 7 of the Clayton Act, 15 U.S.C. § 18. It argues that the merger would have anticompetitive effects on corporate and government accounts but does not assert that the claimant has any ownership interest in such accounts. (Id. ¶ 52.) It further argues that ATTM's "post-transaction spectrum holdings would exceed the FCC's spectrum screen threshold in over one-quarter of local markets." (Id. at 104.) The arbitrations are scheduled to be conducted on an expedited basis. The customers demanding arbitration have successfully opposed consolidation with claims of other customers. Thus, each individual arbitrator, for example, will be called upon to correctly apply and interpret analytical tools such as the Herfindahl-Hirschman Index ("HHI") (id. ¶ 151), and make his or her individual assessment of the competitive impact of the merger.

As relief, the demand seeks both a declaration that the announced merger violates section 7 of the Clayton Act and an injunction against the merger. Alternatively, it seeks a wide range of conditions and limitations on the merging entities, including but not limited to the

following: (1) divestiture of "all T-Mobile spectrum licenses for any local market where the post-merger HHI would increase by 100 points or more and would exceed 2500" (id. at 206); (2) imposition of "fair access rates" (id.); (3) a prohibition on exclusive access to any model of handset (id. at 208-09); (4) a requirement that ATTM offer data roaming at "cost-based rates and without anticompetitive restrictions" (id. at 210); (5) a requirement that ATTM extend by five years "all interconnection agreements," "all special access agreements," and "all IP interconnection agreements" (id. at 212-15); and (6) a requirement that ATTM make significant spectrum divestitures to existing wireless carriers (id. at 217). The individual customers seek no money damages and no relief specific to their customer agreements with ATTM.

ATTM moves for a preliminary injunction to enjoin the arbitrations, arguing that defendants' demands for arbitration fall outside the scope of the arbitration agreement between ATTM and its customers. Defendants move to compel the arbitrations, asserting that the disputes are properly within the scope of the parties' arbitration agreement. T-Mobile, the Communications Workers of America, and the States of Utah, Alabama, Georgia, Kentucky, Louisiana, New Mexico, North Dakota, Oklahoma, and West Virginia have sought and been granted leave to appear as amici curiae. All amici support ATTM's motion for a preliminary injunction.

DISCUSSION

I.   The Scope of the Parties' Arbitration Agreement

Defendants' motion asserts that their demand for arbitration falls squarely within the Wireless Customer Agreement (the "Agreement"). The arbitration provision contains broad language that "all disputes and claims" are subject to arbitration. (Agreement § 2.2(1).) The provision itself states that it is "intended to be broadly interpreted." (Id.) The arbitration

4

provision, however, is qualified by two important limitations. First, it provides that the customer and ATTM may only bring claims against the other in their "individual capacit[ies], and not as a plaintiff or class member in any purported class or representative proceeding." (Id. § 2.2(6).)[1] Second, it provides that "[t]he arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." (Id.)

The parties do not dispute that the issue of the scope of the arbitration agreement is a matter for this Court to decide. The parties do, however, dispute whether defendants' demands for arbitration, which seek to enjoin ATTM's proposed acquisition of T-Mobile, or, in the alternative, to impose an extensive list of conditions on the announced merger, fall within the scope of the parties' arbitration agreement.

"The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (alteration and emphasis in original) (quoting AT&T Tech. Inc., v. Commc'ns Workers, 475 U.S. 643, 649 (1986)). In resolving this issue, the Court is mindful of the "strong federal policy favoring arbitration as an alternative means of dispute resolution." JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) (quoting Hartford Accident &

---

[1] On September 23, 2011, Judge Ryskamp of the United States District Court for the Southern District of Florida granted ATTM's motion for a preliminary injunction against the arbitration demands of eight ATTM wireless customers. See Order, AT&T Mobility LLC v. Bushman, No. 9:11-cv-80992-KLR (S.D. Fla. Sept. 23, 2011). Judge Ryskamp held that ATTM was highly likely to succeed on the merits of its claim that the defendant-customers breached the terms of their Wireless Customer Agreement by seeking "class-like injunctive relief." See id. at 4-5 (noting that the customers' arbitration demands "bear the hallmarks of a class action").

The Supreme Court upheld the validity of a clause both requiring that arbitration proceed on an individualized basis and prohibiting any form of class or representative action. AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011).

5

Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001)). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam, 537 U.S. at 83 (internal quotation marks omitted).

      Defendants' demand for arbitration seek as its sole relief an injunction against the announced merger or, alternatively, a host of conditions on the merger—none of which are tailored to the individual claimant. An injunction of the announced merger or the imposition of conditions on the merger would necessarily affect the rights of all individuals and entities who have an interest, either in favor of or against, the consummation of the merger, including, among others, other ATTM customers, T-Mobile and its own wireless customers, labor unions, private businesses, and the public-at-large. Defendants do not seek any other, narrower relief—injunctive, monetary, or otherwise—that would affect only the individual claimant initiating the arbitration. Thus, there is nothing to arbitrate which is not foreclosed by the contractual limitation on the relief that may be awarded: "[t]he arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." (Agreement § 2.2(6).)

      Defendants note that under the subheading of "Summary," Section 2.1 of the Agreement states that arbitrators "can award the same . . . relief that a court can." (Id. § 2.1.) However, this description of the arbitration process and how it operates does not supplant the specific limitations contained in Section 2.2 regarding the type of declaratory or injunctive relief

that may be awarded. Rather, Section 2.2—titled "Arbitration Agreement"—contains the aforementioned provisions limiting the type of declaratory or injunctive relief that an arbitrator may award to relief "only in favor of the individual party seeking relief." (Id. § 2.2(6).)

Defendants argue that an injunction against the merger may fairly and appropriately be viewed as "declaratory or injunctive relief" awarded "in favor of the individual party seeking relief." (Id.) But the natural reading of the entire phrase suggests otherwise. It is an important limitation on the power of the arbitrator. The parties withheld from the arbitrator the power to decide questions that would necessarily affect the rights of more than the parties to the dispute through the grant of declaratory or injunctive relief.

As the only relief sought by the individual defendants is relief that is foreclosed by the language of the arbitration provision, the demand for arbitration is beyond the scope of disputes that the parties have contractually agreed to arbitrate.

II.     The Arbitrability of Claims for Injunctive Relief Under the Clayton Act

ATTM's complaint is brought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and the Agreement. ATTM seeks both a declaration that defendants' claims are not arbitrable and an injunction against the arbitrations. (Complaint ¶¶ 38-53.) Because of this Court's ruling on the scope of the arbitration clause, this Court need not reach the issue of whether an antitrust claim arising under section 7 of the Clayton Act is properly subject to arbitration. The United States Supreme Court spoke to the arbitrability of certain antitrust claims in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985), holding that nothing contained in either the FAA or the Sherman Act expressly forbids the enforcement of a provision requiring arbitration of a claim for treble damages under section 1 of the Sherman Act. In so holding, however, the Court did not speak to the arbitrability of a claim for injunctive relief

7

premised upon a violation of section 7 of the Clayton Act. A merger may adversely affect, have little or no impact on, or be a pro-competitive force in a particular product or geographic market. At this juncture and in view of the Court's ruling on the scope of the arbitration provision, this Court need not decide whether arbitrators are competent to foreclose a merger that is potentially beneficial to the national or regional economy.

The Court also need not address whether the requirement of judicial confirmation of an arbitration award under the FAA is a ground for denying ATTM's request for an injunction. An eleventh hour ruling from an arbitrator purporting to award injunctive relief against the merger, which is then subject to expedited confirmation proceedings in district court, may well wreak havoc in the securities markets as investors attempt to gauge its outcome. Because of this Court's denial of the motion to compel arbitration, it is not necessary to reach the merits of ATTM's claim for injunctive relief. Plaintiff's motion for preliminary injunction is denied without prejudice to renewal. Defendants' motion to dismiss is denied for the same reasons that their motion to compel arbitration is denied.

CONCLUSION

For the reasons stated above, defendants' motion to compel arbitration and dismiss plaintiff ATTM's complaint (Docket #4) is DENIED. Accordingly, this Court need not address plaintiff's motion for a preliminary injunction (Docket #7). The Court will retain jurisdiction over the matter pending the closing or abandonment of the announced merger.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 7, 2011

8